IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**WADE BOWMAN**                                                                                          **PLAINTIFF**

V.                                            **CASE NO. 5:23-CV-5121**

**3M COMPANY**                                                                                          **DEFENDANT**

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant 3M Company's Motion for Summary Judgment (Doc. 20).[1] For the reasons explained below, the Motion is **GRANTED**.

## I. BACKGROUND

Plaintiff Wade Bowman was hired by 3M in September 2000. During his long tenure at the company, he worked in various offices around the country and steadily advanced in title, salary, benefits, and prestige. Finally, in 2016 he was promoted to head up the Walmart account, 3M's largest client in terms of sales-dollars. He moved to 3M's office in Rogers, Arkansas, and assumed the role of Director of Sales for Walmart/Sam's Club. About twenty employees worked in the office, four or five of whom reported to Bowman.

Sometime in December 2021 or January 2022, Bowman learned that 3M had opened an ethics investigation targeting him, his supervisor Terry Marquardt, and other employees on the Walmart sales team. 3M suspected that Bowman, Marquardt, and others were violating 3M's Code of Ethics by playing golf during the work day and

---

[1] In ruling on the Motion, the Court also considered 3M's Brief in Support (Doc. 21) and Statement of Undisputed Facts (Doc. 22), Plaintiff's Response Brief (Doc. 25) and Response to Statement of Undisputed Facts (Doc. 26), 3M's Reply (Doc. 30), and all evidence attached to the briefing.

charging non-business expenses, including alcohol, to 3M, even though no customers attended these outings and no meeting agendas were prepared in advance. Bowman recalls being interviewed at least twice, but possibly three times, by 3M's legal counsel in connection with the ethics investigation. *See* Doc. 21-1, p. 13 (Bowman Depo.).

In February 2022, 3M placed Bowman on paid administrative leave, and in March, 3M's Group President of Consumer Business, Jeff Lavers, made the decision to fire Bowman (age 49), Marquardt (age 58), and two other employees working in the Rogers office, Trevin Haines (age 48) and Christy Kitchens (age 39). *See* Doc. 21-3, p. 2 (Lavers Decl.).[2] Lavers asked Brad Graves, the Senior Vice President of Consumer Business for 3M, to deliver the bad news. Graves explained to Bowman the reasons why the company had decided to fire him, and Human Resources Specialist Shelly Gruber "informed him of the logistics of the termination." (Doc. 27, ¶ 57).

Bowman contends that he did not deserve to be fired but admits that 3M gave him two reasons for its decision: (1) he charged non-business expenses, including the cost of alcohol on the golf course, to the company in violation of company policy, and (2) he failed

---

[2] Bowman asks the Court to disregard Lavers's Declaration because 3M failed to properly identify him as a potential witness during discovery. But 3M's counsel responds that *both parties* identified Lavers as a potential witness in their respective initial disclosures in 2023. In fact, *Bowman's* disclosures described Lavers as a "3M Exec VP" who "[w]ould have had conversations w/ Brad Graves . . . regarding Plaintiff's termination." (Doc. 30, p. 2). In addition, both Bowman and Marquardt mentioned Lavers multiple times in their respective depositions and demonstrated familiarity with his executive role at 3M. *See* Docs. 21-1 & 21-2. Federal Rule of Civil Procedure 26(a) only requires a party to disclose the name, address, and phone number of "each individual likely to have discoverable information—along with the subjects of that information." And Rule 26(e) only requires a party to supplement its witness disclosure if "in some material respect the disclosure or response is incomplete or incorrect" and "not otherwise . . . known to the other part[y]." The Court is not persuaded that 3M needed to supplement its initial disclosures to clarify that Lavers made the final decision to fire Bowman; identifying Lavers as a person with knowledge of the termination decision was enough.

to disclose that he accepted a $35,000 personal loan from a Walmart executive in connection with the purchase of a home. *See* Doc. 21-1, p. 39.

With respect to 3M's first reason for termination, Bowman admits that he submitted thirty-six expense reports in 2020 and 2021 for "internal business meetings" that took place on the golf course. These "internal business meetings" involved only Bowman and one or two of his officemates. *See* Doc. 27, pp. 10–11. Bowman further admits that he sought "reimbursement for any alcohol he or others purchased and consumed" at these "internal meetings." *Id.* at p. 9. He also concedes that "[t]here may not have been written agendas" for the meetings.[3] *Id.* at p. 10. However, he defends his actions by pointing out that "at no time prior to his termination was [he] disciplined or reprimanded" and that it "was commonplace at 3M" to bill the company for food and alcohol consumed at the golf course. *Id.*[4]

---

[3] Bowman testified that "it was a challenge" to create written agendas for internal business meetings before they happened, so his usual practice, given "the rigors of work," was to write down a meeting's purpose in the margin of a food and/or alcohol receipt and then submit it for reimbursement. (Doc. 21-1, p. 22).

[4] During Bowman's deposition, he was asked to explain why 3M's business benefited from officemates meeting at the golf course and consuming beer and liquor at 3M's expense. The following colloquy ensued:

> Q. And is there any reason you had these conversations with Terry [Marquardt] and Trevin [Haines] on a golf course as opposed to in the office?
>
> A. To get away from the office, much better environment, more relaxed, you know, away from—so we could have more personal conversations about business, multiple different reasons.
>
> Q. Well, at your office when you were working for 3M, did you have a private office or was everyone out in cubicles and kind of an open floor plan?
>
> A. There was a combination of that. I did have my own office.

3

3M's second reason for firing Bowman was that "a high-ranking executive at Walmart who had some responsibility for Walmart's business with 3M" sold her home to Bowman and "agreed to permit Bowman to pay the balance of the home loan purchase price (above that for financing—$35,000) within a short period of time." *Id.* Bowman agrees those facts are true; his only dispute is with 3M's characterization of the transaction as a "personal loan." *Id.*

After Bowman was fired, 3M conducted an open-application process to fill his position. Several people applied. The person selected for the job was a thirty-eight-year-old man named Patrick Hiner. Bowman, who was over the age of forty at the time of termination, alleges that he was fired due to age discrimination in violation of the Age Discrimination in Employment Act ("ADEA").

## II. LEGAL STANDARD

A party moving for summary judgment must establish both the absence of a genuine dispute of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56. The Court must review the facts in the light most favorable to the nonmoving

---

> Q. Is there any reason you could not have private conversations with Terry within a private office within the building?
>
> A. Oh, we did. But again, you know, this is 22 years of working at 3M, multiple different golf meetings. That was — that was part of the culture. It was a great opportunity to get a one-on-one conversation, again, during a four to five-hour period. There's nothing better in my opinion, whether it be with a customer or whether it be with teammates, it takes people off their guard, they're more relaxed, you get great conversations about business, you get the real story versus exactly what's in the office. I mean, there's multiple different benefits to 3M in having that kind of environment.

(Doc. 21-1, p. 34).

4

party and give that party the benefit of any inferences that can be drawn from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212–13 (8th Cir. 1997). If the moving party meets its burden, "the nonmoving party must then come forward with specific facts showing that there is a *genuine issue for trial.*" *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quotations omitted). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.*

"To be material, a fact must 'affect the outcome of the suit under the governing law.'" *Torgerson v. City of Rochester*, 643 F.3d 1031, 1052 (8th Cir. 2011) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "'The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient' to survive summary judgment." *Anderson v. Durham D&M, L.L.C.*, 606 F.3d 513, 518 (8th Cir. 2010) (quoting *Liberty Lobby*, 477 U.S. at 252). The nonmoving party must instead produce sufficient evidence "such that a reasonable jury could return a verdict" in their favor. *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Liberty Lobby*, 477 U.S. at 248 (1986)).

"An age discrimination plaintiff may survive the defendant's motion for summary judgment either by setting out direct evidence of discrimination or by creating an inference of discrimination under the *McDonnell Douglas* burden-shifting framework." *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1152 (8th Cir. 2007) (citation omitted). Here, Bowman has no direct evidence of discrimination, which means he must meet his initial burden of proof by establishing a prima facie case. He does this by showing that: (1) he is over forty years old; (2) he met the applicable job qualifications; (3) he suffered an adverse employment

action; and (4) he was replaced by someone sufficiently younger to permit an inference of age discrimination. *Ramlet v. E.F. Johnson Co.*, 507 F.3d 1149, 1153 (8th Cir. 2007). For purposes of summary judgment, 3M concedes that Bowman has met these prima facie elements.

Next, the burden shifts to 3M to articulate a legitimate, nondiscriminatory reason for firing Bowman. *See Starkey v. Amber Enters.*, 987 F.3d 758, 763–64 (8th Cir. 2021). Once that burden is cleared, Bowman must point to facts to show that 3M's reason "was mere pretext for discrimination" and that "age was the 'but-for' cause of the challenged adverse employment action." *Id.* (quoting *Gibson v. Am. Greetings Corp.*, 670 F.3d 844, 856 (8th Cir. 2012)). The ADEA's but-for standard "is a heightened standard for pretext," meaning that it is more stringent to meet than the mixed-motive analysis used in Title VII claims. *Heisler v. Nationwide Mut. Ins. Co.*, 931 F.3d 786, 798 (8th Cir. 2019).

## III. DISCUSSION

Since Bowman has made out a prima facia case of age discrimination, the burden shifts to 3M to show a legitimate, non-discriminatory reason for firing him. As previously discussed, the company had not one, but two reasons: first, Bowman's admitted practice of seeking reimbursement for golf course outings with his officemates, and second, his failure to disclose to 3M that he bought a home contingent on receiving a personal loan from an executive officer of 3M's customer. Bowman acknowledges that 3M engaged its legal counsel to investigate these ethics violations and that three other members of the Walmart sales team in the Rogers office were fired at the same time, including one employee under the age of forty.

Bowman does not dispute that he did all these things; he only disputes that his actions warranted discipline. But the question "is not whether [3M] made a good decision, or even a fair one" but "whether it took an adverse employment action based on a discriminatory animus." *Schaffhauser v. United Parcel Service*, 794 F.3d 899, 903 (8th Cir. 2015); *Barber v. C1 Truck Driver Training, LLC*, 656 F3.d 782, 795 (8th Cir. 2011) ("The appropriate scope of investigation is a business judgment, and shortcomings into an investigation do not by themselves support an inference of discrimination."). Lavers and Gruber both testified that 3M terminated Bowman's employment for violating company policy. That was their good-faith belief as to why he was fired, and Bowman points to no evidence to the contrary. More to the point, because 3M's decision does not suggest any discriminatory animus, the Court cannot second-guess whether the firing decision was right, just, or fair. "Federal courts do not sit as super-personnel departments reviewing the wisdom or fairness of the business judgments made by employers." *Guimaraes v. SuperValu, Inc.*, 674 F.3d 962, 977 (8th Cir. 2012).

Bowman's attempts to show discriminatory animus all fall flat. The mere fact that he was replaced by a younger employee is of "insufficient probative value to persuade a reasonable jury that [he] was discriminated against.'" *Carraher v. Target Corp.*, 503 F.3d 714, 719 (8th Cir. 2007). Bowman lacks evidence of any valid comparator being treated differently, and instead makes the blanket claim that other high-level executives did the same or similar things but were not fired. Such a vague allegation is not enough to show pretext. *See McGinnis v. Union Pacific R.R.,* 496 F.3d 868, 876 (8th Cir. 2007) (affirming summary judgment on an age discrimination claim when the plaintiff merely "dispute[d]

7

the validity of his [disciplinary] citations" and "claim[e]d other employees who violated rules were not fired").

Finally, Bowman cannot defeat summary judgment by observing that Graves once referred to him as a "blocker," which in 3M parlance means an employee who has remained in his current position for a length of time, has significant experience in that position, and is reluctant to move to another position and/or another office location. Marquardt testified that he overheard Graves ask whether Bowman was a "blocker" during a 3M leadership meeting in a Minneapolis restaurant on January 16, 2022. Roughly forty to forty-five 3M executives were present at this meeting. *See* Doc. 21-2, pp. 8, 34. However, context is important, and Marquardt noted that immediately before Graves asked, "Is [Bowman] a blocker?" several executives nearby had been *praising* Bowman and wondering aloud whether he might be a good fit for "probably five or six . . . jobs outside of Bentonville," as they "wanted [him] on their team." (Doc. 21-2, p. 4).

The Court takes Bowman's point that the term "blocker" *could* correlate with advanced age. After all, a sought-after, experienced employee who might be labeled a "blocker" is more likely to be older than younger. However, "[b]ecause age and years of service are analytically distinct, an employer can take account of one while ignoring the other, and thus it is incorrect to say that a decision based on years of service is necessarily 'age based.'" *See Hazen Paper Co. v. Biggins*, 507 U.S. 604, 611 (1993). In short, Graves's use of the word "blocker" to refer to Bowman does not indicate that age was the but-for reason for his termination. Moreover, this seems to have been a stray remark said on one occasion—and not in the context of the decision to fire Bowman. "'Stray remarks'

8

standing alone do not give rise to an inference of discrimination." *Fitzgerald v. Action, Inc.*, 521 F.3d 867, 876 (8th Cir. 2008).

## IV. CONCLUSION

The Court finds that Bowman has failed to show that age was the but-for cause of his termination. Therefore, **IT IS ORDERED** that 3M's Motion for Summary Judgment (Doc. 20) is **GRANTED**, and the case is **DISMISSED WITH PREJUDICE**. Judgment will enter contemporaneously with this Order.

**IT IS SO ORDERED** on this 22nd day of January, 2025.

TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE